# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN COURTHOUSE

| | |
|---|---|
| SHAUNTE STYLES, and NADESHA GRANT, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  - against -<br><br>BROWN-FORMAN CORPORATION,<br>      Defendant. | 1:24-cv-04043<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Shaunte Styles ("Plaintiff Styles"), and Nadesha Grant ("Plaintiff Grant") ("Plaintiffs"), through Counsel, allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

1. The Lynchburg Lemonade "is inextricably tied to Jack Daniel's," "based out of Lynchburg, Tennessee," and is "their official cocktail."[1]

2. A "Lynchburg Lemonade" has achieved trade and consumer recognition as a combination of "Lemon-lime soda [,] spiked with whiskey, triple sec (orange liqueur) and a dash of sweet and sour mix."[2]

---

[1] Whiskey Lemonade, Recipes, Sugar, Spice and Glitter; Zach Johnston, Lynchburg Lemonade is a Breezy Weekend Refresher – Here's Our Recipe, UpRoxx, July 2, 2021.

[2] Michael Charles, Lynchburg Lemonade, AllRecipes.com, July 29, 2021; a sweet and sour mix is a blend of citrus juice, sugar and water.



3.    Though "[y]ou can, of course, pour a whiskey other than Jack Daniel's (from Lynchburg, Tennessee) into this cocktail, and it will be pretty good, [] it's not an authentic Lynchburg lemonade."[3]

4.    Next, according to "Susannah Brinkley Henry, a cocktail blogger," these ingredients are "shaken together and poured over ice, [and] garnished with a slice of lemon."[4]



---

[3] Colleen Graham, Jack Daniel's Lynchburg Lemonade, The Spruce Eats, May 18, 2024.
[4] Susannah Brinkley Henry, lynchburg lemonade, Feast and West, Aug. 4, 2023.

5.    The Lynchburg lemonade's popularity is due to "its simplicity and balance" and "refreshing taste, with the whiskey providing a warm, smooth base that is perfectly complemented by the tartness of the lemon and the sweetness of the triple sec."[5]

6.    To appeal to consumers seeking this "summertime classic," and staple of "barbecues, pool parties, and outdoor weddings," Brown-Forman Corporation ("Defendant") manufactures and markets Jack Daniels Lynchburg Lemonade in cans, described as a "Country Cocktail" ("Product"), with a big slice of lemon, emphasizing it is "Best Served Iced Cold" and to "Serve Cold."



---

[5] [Lynchburg Lemonade: The Story of Refreshing Tradition](#), MyBev Store, Feb. 29, 2024.

7. Expecting the Lynchburg Lemonade Country Cocktail to contain whiskey is not limited to consumers.

8. Well-known Massachusetts purveyor of alcoholic beverages, Harman's Wine & Spirits, describes it as "a pre-mixed cocktail made from a blend of Jack Daniel's Tennessee Whiskey, triple sec liqueur and a hint of lemon and lime."



9. Other highly regarded sellers of alcohol, like Michigan's Beverage Warehouse, describe the Lynchburg Lemonade Country Cocktail as delivering "[T]he sour yet refreshingly sweet taste of lemonade mixed with classic Jack Daniels."[6]

---

[6] Beverage Warehouse, Country Cocktails Lynchburg Lemonade.

JACK DANIELS COUNTRY
COCKTAILS LYNCHBURG
LEMONADE 16OZ CAN

$2.99

RTD - READY TO DRINK

*DESCRIPTION*

The sour yet refreshingly sweet taste of lemonade mixed with
classic Jack Daniels is a tasty treat sure to satisfy your taste
buds during the hot summer months. This sweet and sour
staple is bound for the picnic cooler.

10.   To protect consumers (and retailers) from being misled about the alcoholic beverages they buy, the Federal Alcohol Administration Act ("FAAA") prohibits passing off lower quality malt beverages as containing distilled spirits, "irrespective of falsity," with respect to, *inter alia*, "the[ir] identity and quality." 27 U.S.C. § 201 *et seq*., e.g., 27 U.S.C. § 205(e) ("Labeling"); Title 27, Code of Federal Regulations ("C.F.R."), Parts 1 to 39, Tax and Trade Bureau ("TTB").

11.   New York adopted these laws through its Alcoholic Beverage Control ("ABC") Law, because "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging," and their mental impressions related to other labeling and packaging they have encountered, to make quick decisions about whether what they are buying contains distilled spirits.[7] *See*, i.e., ABC § 107-a(b)-

---

[7] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016):

(c); 9 NYCRR § 25.1 *et seq*; 27 C.F.R. § 7.122(a); 9 NYCRR § 84.1(a) (adopting TTB labeling regulations).[8]

12. The labelling of the Jack Daniels Country Cocktail Lynchburg Lemonade is misleading for multiple reasons.

13. First, despite the labeling and packaging, which conveys the presence of whiskey, the Lynchburg Lemonade Country Cocktail does not contain whiskey, or if it does, not more than a de minimis or negligible amount. 27 C.F.R. § 7.128(a).

14. That the Product lacks whiskey is evident from its "statement of composition," "Premium Malt Beverage With Natural Flavors and Certified Colors Added," at the bottom of the can, which "[only] meet[s] the…Minimum type size," and is not "readily legible to potential consumers under ordinary conditions." 27 C.F.R. § 7.52(a); 27 C.F.R. § 7.53(a)(2); 27 C.F.R. § 7.63(a)(2); 27 C.F.R. § 7.141(b)(2).

---

219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007).

[8] New York Codes, Rules and Regulations ("NYCRR"), Title 9, Executive Department, Subtitle B, Division of Alcoholic Beverage Control, Chapter I - Rules of The State Liquor Authority, Parts 25 to 106.



15.  The absence of whiskey is further confirmed by the side of the can, requiring not only that it be turned around, but that one twists their neck to read "Flavored Beer."



16.    Second, the "Jack Daniels" brand name, exclusively associated with whiskey, "creates [,] by itself…an[] erroneous impression or inference as to the [] origin, identity, or other characteristics of the [Product]," that it contains whiskey. 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

17.    Third, the "Jack Daniels" brand name, exclusively associated with whiskey, "creates [,] in association with [its] other printed or graphic matter," including the distinctive or fanciful name, "Lynchburg Lemonade – Country Cocktails," the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, the inconspicuous statement of composition, in the smallest allowed size, at the very bottom of the can, and/or the emphasis on ice and serving

cold, "[the] erroneous impression or inference as to [its] identity, or other characteristics," that it contains whiskey. 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

18.    While the labeling does not mention "ice" by itself, the instructions that it is "Best Served Ice Cold" and to "Serve Cold" are consistent with how a Lynchburg Lemonade is understood as a "drink [] made for hot and humid days that only [this] ice-cold boozy lemonade can cure," and is recommended to be served "well chilled."[9]

 

---

[9] Zach Johnston, Lynchburg Lemonade is a Breezy Weekend Refresher – Here's Our Recipe, UpRoxx, July 2, 2021; Michelle McGlinn and Tasting Table Staff, Classic Lynchburg Lemonade Recipe, Tasting Table, May 6, 2023.

19.   Fourth, while the "[B]rand name" of "Jack Daniels" is "[M]andatory information," this is not "qualified with the word 'brand' or with some other qualification [which could] dispel[] any misleading impression that might otherwise [be] created," that it contains whiskey. 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

20.   Fifth, while "use of a cocktail name," "Lynchburg Lemonade – Country Cocktails," as the Product's "distinctive or fanciful name" is not prohibited, "the overall labeling [] present[s] a misleading impression about [its] identity." 27 C.F.R. § 7.128(b)(3).

21.   This is because of (1) the prominence of the Jack Daniels brand name, without qualification, (2) the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, (3) the inconspicuous statement of composition, in the smallest allowed size, at the very bottom of the can, and/or (4) the emphasis on ice and serving cold.

22.   Sixth, though the lower part of the can contains the "Mandatory information" "of alcohol content [] expressed as a percentage of alcohol by volume," "4.8% ALC BY VOL," which applies when "malt beverages [] contain any alcohol derived from added nonbeverage flavors or other added nonbeverage ingredients [] containing alcohol," this is insufficient to tell purchasers that the Product lacks whiskey. 27 C.F.R. § 7.63(a)(3); 27 C.F.R. § 7.65(b)(1).




23.  Though this requirement is or may be intended to put buyers on notice as to whether a flavored malt beverage contains distilled spirits, through added flavoring, "4.8% ALC BY VOL" is insufficient to disclaim the presence of whiskey.

24.  At best, this "percentage of alcohol by volume" "gives the consumer a general idea of how 'strong' or 'concentrated' [the Lynchburg Lemonade] is in relation to certain other alcoholic beverages," but does not tell them it lacks whiskey.[10]

---

[10]  Letter from Center for Science in the Public Interest ("CSPI"), Consumer

25. Seventh, the above-identified representations "directly create[] a misleading impression" that the Product contains whiskey. 27 C.F.R. § 7.122(b)(1).

26. Eighth, the above-identified representations "create[] a misleading impression…indirectly through ambiguity, omission, [and] inference" that the Product contains whiskey. 27 C.F.R. § 7.122(b)(1).

27. As a result of the false and misleading representations, comparisons, and omissions identified here, the Product is sold at a premium price, at or around $3.39 for 23.5 fl oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and/or higher than it would be sold for absent the misleading representations, comparisons, and/or omissions.

## JURISDICTION

28. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

30. Plaintiff Styles is a citizen of New York.

31. Defendant is a citizen of Delaware and Kentucky.

32. The class of persons Plaintiff Styles seeks to represent includes persons

_____

Federation of America ("CFA"), and National Consumers League ("NCL"), to Alcohol and Tobacco Tax and Trade Bureau ("TTB"), In re: TTB Notice 176, 83 Fed. Reg. 60562 (Nov. 26, 2018), Feb. 22, 2019.

who are citizens of a different state from which Defendant is a citizen.

33.   The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in this State and/or online, to citizens of this State.

34.   Defendant transacts business in New York, through the sale of the Product to citizens of New York, from grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in this State and/or online, to citizens of this State.

35.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

36.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, likeness, quantity, attributes, type, origins, amount, other versions, and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the

Product in this State.

37.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, likeness, features, quantity, attributes, type, origins, amount, and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State, and derives substantial revenue from interstate or international commerce.

## VENUE

38.   Plaintiff Styles resides in New York County.

39.   Venue is in this Court because a substantial or entire part of the events or omissions giving rise to Plaintiff Styles' claims occurred in New York County.

40.   Venue is in this Court because Plaintiff Styles' residence is in New York County.

41.   Plaintiff Styles purchased, used, consumed, and/or applied the Product in reliance on the packaging, labeling, representations, comparisons, and omissions, identified here, in New York County, and/or other areas.

42. Plaintiff Styles first became aware the packaging, labeling, representations, comparisons, and omissions, were false and misleading, in New York County.

## PARTIES

43. Plaintiff Styles is a citizen of New York County, New York.

44. Plaintiff Grant is a citizen of Kings County, New York.

45. Defendant Brown-Forman Corporation is a Delaware corporation with a principal place of business in Kentucky.

46. Defendant is one of the world's largest seller of distilled spirits.

47. Defendant manufactures, markets, and sells Jack Daniels Lynchburg Lemonade Country Cocktail in various sizes with labeling similar or identical to what is identified here.

48. Plaintiffs are like most consumers of alcoholic beverages, who prefer those containing distilled spirits to those based on brewing and fermentation, or malt alcohol, due to reasons including superior quality, health, and/or taste.

49. Plaintiffs are like almost all Americans who know, when seeing the name "Jack Daniels," that it refers to whiskey.

50. Plaintiffs are like many Americans who know what a Lynchburg Lemonade is, and that it is based on whiskey, and especially, Jack Daniels whiskey.

51. Plaintiffs and consumers observed and relied on (1) the cocktail and fanciful name of Lynchburg Lemonade – Country Cocktails, (2) under the Jack Daniels name, exclusively associated with whiskey, (3) the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, (4) the absence of

15

any qualifying terms such as "brand," and/or (5) the emphasis on ice and serving cold, which is how a Lynchburg Lemonade would be served, expecting it to have whiskey.

52.   Plaintiffs relied on the omissions and/or failure to conspicuously identify the Product as a malt beverage, which did not contain whiskey, or if it did, not more than a de minimis amount, through its statement of composition, which was not noticed or observed amidst the above-identified representations.

53.   Plaintiffs did not expect the Jack Daniels Lynchburg Lemonade Country Cocktail they bought would not contain whiskey, but would be based on malt alcohol.

54.   Plaintiffs knew, and/or were aware of the Jack Daniels name and its association with whiskey.

55.   Plaintiffs knew, and/or were aware, of what a Lynchburg Lemonade was.

56.   Plaintiffs expected the Product to be a Lynchburg Lemonade and/or contain the distilled spirit of whiskey, and did not expect to buy a malt beverage.

57.   Plaintiffs did not notice the statement of composition, in small print, at the bottom of the can, or its description as a flavored beer on the side of the can, which identified the Product as a malt beverage, because of the more prominent representations, such as (1) the cocktail and fanciful name of Lynchburg Lemonade – Country Cocktails, (2) under the Jack Daniels name, exclusively associated with

16

whiskey, (3) the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, (4) the absence of any qualifying terms such as "brand," and/or (5) the emphasis on ice and serving cold, which is how a Lynchburg Lemonade would be served.

58.    Plaintiffs purchased the Product between April 2021 and April 2024, at grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in New York, and/or other areas.

59.    Plaintiffs bought the Product at or around the above-referenced price.

60.    Plaintiffs paid more for the Product than they would have had they known it was not a Lynchburg Lemonade, because it lacked whiskey, since it was a malt beverage, as they would not have bought it or would have paid less.

61.    The Product was worth less than what Plaintiffs paid, and they would not have paid as much, absent Defendant's false and misleading statements, omissions and/or comparisons.

62.    Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components, relative to themselves and other similar versions or products.

## CLASS ALLEGATIONS

63.    Plaintiffs seek to represent the following class:

> All persons in New York who purchased the
> Product in New York during the statutes of
> limitations for each cause of action alleged,
> expecting it to be a Lynchburg Lemonade,
> containing whiskey, instead of a malt
> beverage, without whiskey.

64.    Excluded from the Class are (a) Defendant, Defendant's board members,

executive-level officers, members, and attorneys, and immediate family members of

any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's

immediate family, and Court staff and (d) any person that timely and properly

excludes himself or herself from the Class.

65.    Common questions of issues, law, and fact predominate and include

whether Defendant's representations were and are misleading and if Plaintiffs and

class members are entitled to damages.

66.    Plaintiffs' claims and basis for relief are typical to other members

because all were subjected to the same unfair, misleading, and deceptive

representations, omissions, and actions.

67.    Plaintiffs are adequate representatives because their interests do not

conflict with other members.

68.    No individual inquiry is necessary since the focus is only on Defendant's

practices and the class is definable and ascertainable.

69.    Individual actions would risk inconsistent results, be repetitive and are

impractical to justify, as the claims are modest relative to the scope of the harm.

70.   The class is sufficiently numerous, with over 100 members, because the Product has been sold throughout the State for several years with the representations, omissions, packaging, and labeling identified here, at grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in this State and/or online, to citizens of this State.

71.   Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequate and fairly.

## CAUSES OF ACTION

### COUNT I
#### General Business Law ("GBL") §§ 349 and 350

72.   Plaintiffs incorporate by reference paragraphs 1-27.[11]

73.   The purpose of the GBL is to protect consumers against unfair and deceptive practices.

74.   This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

75.   The GBL considers false advertising, unfair acts, and deceptive practices in the conduct of any trade or commerce to be unlawful.

76.   Violations of the GBL can be based on other laws and standards related

---

[11] To the extent any incorporation by reference is required.

to consumer deception.

77.  Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq.*

78.  A GBL violation can occur whenever any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq.*, are violated.

79.  A GBL violation can occur whenever the standards of unfairness and deception set forth and interpreted by the FTC or the federal courts relating to the FTC Act are violated.

80.  Violations of the GBL can be based on public policy, established by norms, customs, statutes, law, or regulations.

81.  A GBL violation can occur whenever any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices is violated.

82.  In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations," including likeness to other similar products. 15 U.S.C. § 55(a)(1).

83.  In considering whether the label and/or packaging of alcoholic beverages

is misleading, it is required to consider not only representations made or suggested by statements, images, and/or design, but also the extent to which this fails to prominently and conspicuously reveal facts relative to (1) the proportions or absence of certain ingredients, such as distilled spirits, features, and/or attributes, (2) other facts concerning its attributes and characteristics, such as ingredients, quantity, size, amount, origin, type, and/or quality, and/or (3) likeness or similarity to other similar products or beverages, which are of material interest to consumers.

84.    Defendant's false, misleading, and deceptive representations and omissions, and comparisons, with respect to the Product's contents, attributes, features, origins, amount, quantity, ingredients, comparisons, and/or quality, that it was a Lynchburg Lemonade, based on whiskey, are material in that they are likely to influence consumer purchasing decisions.

85.    This is because consumers prefer to buy alcoholic beverages based on distilled spirits instead of malt alcohol, for reasons related to health, taste, and/or quality.

86.    The replacement of the distilled spirit of whiskey with malt alcohol is of material interest to consumers, because they prefer to buy alcoholic beverages based on and/or containing distilled spirits instead of malt based alcohol, for reasons related to health, taste, and/or quality.

87.    The Product could have conspicuously informed consumers that what

they were buying was not a Lynchburg Lemonade, without whiskey.

88.   The labeling of the Product violated the FTC Act and thereby violated the GBL, because the representations, omissions, packaging, labeling, and/or comparisons, (1) the cocktail and fanciful name of Lynchburg Lemonade – Country Cocktails, (2) under the Jack Daniels name, exclusively associated with whiskey, (3) the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, (4) the absence of any qualifying terms such as "brand," and/or (5) the emphasis on ice and serving cold, which is how a Lynchburg Lemonade would be served, created the erroneous impression it contained whiskey, when this was false, because it was a malt beverage.

89.   The labeling, marketing, and comparisons of the Product violates laws, statutes, rules and regulations which proscribe unfair, deceptive, immoral, and/or unconscionable acts or practices, intended to protect the public, thereby violating the GBL.

90.   The labeling of the Product violated the GBL because the representations, omissions, labeling, packaging, and/or comparisons, (1) the cocktail and fanciful name of Lynchburg Lemonade – Country Cocktails, (2) under the Jack Daniels name, exclusively associated with whiskey, (3) the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, (4) the absence of any qualifying terms such as "brand," and/or (5) the emphasis on ice and serving

cold, which is how a Lynchburg Lemonade would be served, was unfair and deceptive to consumers.

91. The labeling of the Product violated the GBL because the representations, omissions, packaging, labeling, and comparisons, (1) the cocktail and fanciful name of Lynchburg Lemonade – Country Cocktails, (2) under the Jack Daniels name, exclusively associated with whiskey, (3) the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, (4) the absence of any qualifying terms such as "brand," and/or (5) the emphasis on ice and serving cold, which is how a Lynchburg Lemonade would be served, was contrary to the ABC, which adopted, where applicable, other laws and regulations.

| Federal | State |
|---|---|
| 27 U.S.C. § 205(e) | ABC § 107-a(c) |
| 27 C.F.R. § 7.52(a) | |
| 27 C.F.R. § 7.53(a)(2) | |
| 27 C.F.R. § 7.63(a)(1) | |
| 27 C.F.R. § 7.63(a)(2) | |
| 27 C.F.R. § 7.64(b) | 9 NYCRR § 84.1 |
| 27 C.F.R. § 7.122(a) | |
| 27 C.F.R. § 7.122(b)(1) | |
| 27 C.F.R. § 7.128(a) | |
| 27 C.F.R. § 7.141(b)(2) | |

92.  Plaintiffs believed the Product would contain the distilled spirit of whiskey, based on (1) the cocktail and fanciful name of Lynchburg Lemonade – Country Cocktails, (2) under the Jack Daniels name, exclusively associated with whiskey, (3) the Jack Daniels trade dress, such as colors, fonts, logos, marks, and other stylistic elements, (4) the absence of any qualifying terms such as "brand," and/or (5) the emphasis on ice and serving cold, which is how a Lynchburg Lemonade would be served, even though it did not contain whiskey.

93.  Plaintiffs paid more for the Product and would not have paid as much if they knew that it did not contain whiskey, and was not a Lynchburg Lemonade, because it was a malt alcohol beverage.

94.   Plaintiffs seek to recover for economic injury, financial damages, and/or economic loss they sustained, based on the misleading labeling, packaging, and/or comparisons of the Product, a deceptive practice under the GBL.

95.  Plaintiffs will produce evidence showing how they and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, labeling, and comparisons, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, and/or other advanced methodologies.

96.  As a result of Defendant's misrepresentations, omissions, and/or comparisons, Plaintiffs were injured and suffered economic and financial damages

by payment of a price premium for the Product, which is the difference between what they paid based on its labeling, packaging, representations, statements, omissions, comparisons, and/or marketing, and how much it would have been sold for without the misleading labeling, packaging, representations, statements, omissions, comparisons, and/or marketing identified here.

## **JURY DEMAND AND PRAYER FOR RELIEF**

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiffs as representatives and the undersigned as Counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   May 27, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiffs*

Spencer Sheehan
Sheehan & Associates P.C.


Chung Law P.C.
James Chung
43-22 216th St
Bayside NY 11361
Tel (718) 461-8808
jchung_77@msn.com

*Counsel for Plaintiffs*

**Certificate of Service**

I certify that on May 27, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

_____/s/ Spencer Sheehan_____